IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAMONT CLIFFORD KING,
    Plaintiff,

vs.                                           Case No. 3:10cv258/RV/EMT

JAMES CROSBY, et al.,
    Defendants.
_____/

## **O R D E R**

Plaintiff, an inmate proceeding pro se, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). He has paid the filing fee in full (*see id.*, clerk's notation). From a review of the complaint, the court concludes that the facts as presented fail to support a viable claim for relief under § 1983 as to each of the named Defendants.[1] The court therefore will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

The events giving rise to this complaint occurred at Walton Correctional Institution ("WCI"), where Plaintiff previously was housed. Plaintiff names thirteen persons as Defendants, each in his or her individual capacity (*see* Doc. 1 at 15): former Department of Corrections ("DOC") Secretary James Crosby; DOC representatives J. Moore, Pilar Tournay, and S. Milliken; WCI Warden Richard S. Schlaf; WCI Assistant Warden Richard A. Johnson; WCI Safety and Health Administrator J. C. Hudson; WCI Chief Medical Officer James Shepard, M.D.; and WCI nurses C. Truett, John Lovelace, L. Williams, Charlanne Merritt, and Parsy Warshefskie (*see id.* 1 at 1–4). In support of

---

[1] Regardless of whether an inmate proceeds in forma pauperis or prepays the filing fee in full, the court must review his civil rights complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A.

his claims, Plaintiff alleges the following facts.[2]  On October 13, 2007, as Plaintiff was taking a shower in his WCI dormitory, an overhead fluorescent light bulb fell from the ceiling, struck him on the head, and broke.  Plaintiff asserts that he suffered trauma to the head and that chemicals and particles of glass from the shattered bulb entered his eyes; according to Plaintiff, he experienced migraine headaches for several days as a result of the incident and now has permanently impaired vision.  Plaintiff apparently declared a medical emergency after the incident and was seen by Defendant Lovelace, but he complains that Defendant Lovelace denied him proper medical treatment.  Plaintiff also apparently alleges that he was seen in the medical department on October 14, 2007, by Defendant Truett, who noted that Plaintiff had no lacerations on his head but did have a "very slight bump."  Plaintiff states that he was placed in the infirmary isolation cell to be near a bathroom and for further monitoring.  According to Plaintiff, Defendants Warshefskie, Sheppard, and Lovelace "confirm[ed]" the report of this treatment, which he contends constituted a "deni[a]l [of] proper medical care."  Defendants Merritt, Sheppard, and Williams also "confirm[ed]" a medical report dated October 16, 2007, which likewise resulted in denying Plaintiff appropriate treatment.  Plaintiff submitted grievances related to the October 2007 incident (including, *inter alia,* with respect to ongoing medical problems allegedly resulting from his injuries and inadequate pain medication) that were processed or forwarded by Defendants Schlaf, Hudson, Johnson, Milliken, Sheppard, Lovelace, Tournay, Crosby, and Moore, but that he nevertheless did not receive adequate medical care.[3]  Plaintiff claims that the complained-of conduct of each of the Defendants violated the Eighth Amendment.  As relief, Plaintiff seeks a declaratory judgment, as well as monetary damages totaling $700,000.00 (*id.* at 15).

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical

---

[2] All facts in this order are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 1 at 7–14).  As presented by Plaintiff, the chronology of events is difficult to decipher.  In amending, to assist the court in understanding Plaintiff's claims, Plaintiff should present a time line of events that explains, in chronological order, the events he alleges took place.

[3] Plaintiff also states that on December 4, 2007, after he had been moved to another dormitory following the October 13, 2007, a second fluorescent light bulb fell on his head.  While it is difficult to ascertain from Plaintiff's allegations, it does not appear that he asserts any claims related to this second incident.

Case No. 3:10cv258/RV/EMT

treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235,

1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980). A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). Where the inmate has received medical treatment, however, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 575 (11th Cir. 1985) (quotation omitted).

Plaintiff acknowledges that he received treatment after the October 13, 2007, incident, both almost immediately and on a longer-term basis. His complaint appears, essentially, to be with the adequacy of the medical care provided by Defendants Shepard, Truett, Lovelace, Williams, Merritt, and Warshefskie. These Defendants apparently believed that Plaintiff's injuries did not warrant treatment or examination beyond that which was provided, medical judgments with which Plaintiff now takes issue. The fact that the opinions of his medical providers may differ from Plaintiff's opinion does not support a claim of cruel and unusual punishment. See Harris, 941 F.2d at 1507 (where treatment has been received and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of medical judgments). Therefore, unless Plaintiff is able to allege facts showing that a named Defendant subjectively knew of a risk of serious harm to Plaintiff based on the medical care he was receiving for the injuries to his head and eyes, yet disregarded that risk by conduct that was more than merely negligent, Farrow, 320 F.3d at 1245–46, Plaintiff cannot establish a constitutional claim. If such facts do exist and are alleged, Plaintiff should name as Defendants only those persons responsible. Plaintiff is also advised that rather than vaguely stating that he did not receive appropriate medical care, he should be specific as to the care he received and the care he contends he needed but was denied.

Additionally, Plaintiff should be aware that he may not hold any Defendant liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F.Supp. 335, 337 (W.D. Mich.1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that Defendants Crosby, Moore, Tournay, Milliken, Schlaf, Johnson, or Hudson was personally involved in the alleged unconstitutional conduct; his only allegation concerning these Defendants is that they denied Plaintiff's grievances and/or appeals concerning the conduct of those Defendants who actually provided him with medical care. Plaintiff does not allege that any of the DOC or WCI supervisory personnel named as Defendants directed a subordinate to act unlawfully or knew that a subordinate would act unlawfully and failed to stop the subordinate from doing so. Nor does Plaintiff allege the existence of a history of widespread inadequate medical care that put these Defendants on notice of the need to correct the alleged deprivation, and they failed to do so. Likewise, Plaintiff does not allege the existence of a custom or policy of the DOC or WCI that resulted in deliberate indifference to Plaintiff's constitutional rights. Therefore, unless additional facts exists and are alleged to support Eighth Amendment claims against them, Plaintiff should drop from any amended complaint Defendants Crosby, Moore, Tournay, Milliken, Schlaf, Johnson, and Hudson.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "Amended Complaint." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

In light of the instant order, Plaintiff's motion requesting service of the complaint by the U.S. Marshal (Doc. 4), shall be denied.

Accordingly, it is **ORDERED**:

1. Plaintiff's motion requesting service of the complaint by the U.S. Marshal (Doc. 4) is **DENIED**, without prejudice.

2. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

3. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the court form. In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

4. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 21st day of September 2010.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**